By the Court. Mason, J.
The question presented for decision is, whether a suit to collect unpaid purchase money secured by bond and mortgage, will he enjoined and restrained by reason of proceedings having been commenced by a third party to recover the premises under an adverse title.
It may he useful to see, in the first place, how this question stands upon authority.
The earliest case in this state is that of Bumpus v. Platner decided by Chancellor Kent, in 1814, and reported in 1 Johns. €J. It. 213. That was a bill filed to enjoin the defendant from foreclosing a purchase money mortgage, on the ground that the grantor had no title, and that the.consideration of the mortgage had therefore failed. He had conveyed with warranty, and no suit had been brought by any person, claiming by title para^ mount. The chancellor remarked, that it was said to be very difficult to extract from the books what the rule of equity is upon this point of failure of consideration after the agreement is executed, hut that it might be safely said that there is no cause *120 of relief on this ground, when possession has passed and com tinned without any eviction at law under a paramount title ; and that it would be without precedent, and dangerous in principle, to arrest and bar the recovery of the debt while the purchaser is still in possession under the purchase deed, and there has been no eviction at law.
This same question came up before him again in the case of Abbott v. Allen, in August, 1817, 2 J. C. R. 519. That, too, was a bill for relief against a bond and mortgage given for the consideration money of the mortgaged premises, on the ground that the title to the land was bad, or at least questionable, so that the plaintiff could not raise money on the security of the land, or sell it. Ho suit, however, had been brought for the recovery of the premises. The chancellor there said, “ if there be no fraud in the case, the purchaser must resort to his covenants, if he apprehends a failure or defect of title, and wishes relief before eviction.” And again: “ If there be no fraud, and no covenants taken to secure the title, the purchaser has no remedy for his money even on a failure of title. This is the settled' rule at law, and I apprehend that the same prevails in equity.” “ I know of no case in which this court has relieved the purchaser where there was no fraud and no eviction. All the cases that I have looked into, proceed on the ground of a failure of the title duly ascertained.”
This would seem to be decisive, and yet in this same case he remarks, “ that it would lead to great inconvenience, and perhaps abuse, if a purchaser in the actual enjoyment of land, and when no third person asserts, or takes any measures to assert, a hostile claim, can be permitted, on a suggestion of a defect or failure of title, and on the principle of qma timet, to stop the payment of the purchase money and all proceedings to recover it.” This language certainly favors the idea that such permission might perhaps be granted to a purchaser, if a third person should actually assert, or even take measures to assert, a hostile claim. And accordingly we find, that about a fortnight after-wards, in the case of Johnson v. Gere, (2 J. C. R. 546,) the same learned chancellor carried out the idea, and granted an injunction to stay proceedings on a bond and mortgage given for *121 purchase money, on the express ground that an ejectment suit had been commenced to recover the mortgaged premises by a third party, claiming under a paramount title. “ The defendant,” said he, “ is entitled, and it will be his duty to defend the ejectment suit, and until that suit is disposed of, he ought not to recover the remaining money due on the bond.” The premises had been conveyed with warranty. This decision, it is true, was on an ex parte application, and it does not appear what was the further disposition of the case; but it was given so soon after the elaborate opinion in Abbott v. Allen, that he must be considered as intending to qualify and restrict the general expressions it contained, and as meaning to extend the interference of the court to a case like the present.
In the case of Leggett v. McCarthy, (3 Edwards’ Ch. R. 126,) Vice-Chancellor McCoun says, “ until the defendant has been evicted, or an action to deprive him of the possession has been commenced, as in Johnson v. Gere, the court of chancery will not interfere to stay proceedings on his bond and mortgage; and later still, Mr. Justice Bronson, in the case of Edwards v. Bodine, (26 Wend. 114,) says, in reference to the case then before the court, u if there was a serious question about the title, and a suit had been acinicdly commenced to recover a portion of the land, chancery might enjoin the respondents from proceeding at law to collect the whole amount of the mortgage debt until the title had been tried, and in such a case, where the proceedings to collect the mortgage debt are commenced in chancery, that court might, perhaps, stay the foreclosure until there had been a trial at law and he cites the case of Johnson v. Gere, in support of his position. In two cases in New Jersey also, cited by the counsel on the argument, Shannon v. Marselis, (Saxton’s R. 425,) and Van Waggoner v. McEwen, (1 Green’s Ch. R. 412,) the case of Johnson v. Gere is mentioned by the court with approbation. It is to be observed, however, that in none of these cases did the ' precise point in Johnson v. Gere, arise; and consequently the observations of the various judges, although entitled to high respect, as proceeding from learned and experienced jurists, have not the weight of authority.
On the other hand, the broad proposition laid down by Chan *122 cellor Kent, in Bumpus v. Platner, and repeated by him, after a minute and careful examination, in Abbott v. Allen, to wit, that in the absence of fraud, no relief will be granted in this court, against the collection of a bond and mortgage for purchase money, where possession has passed and continued, without an eviction at law, under a paramount title, has been repeatedly sanctioned and confirmed in the courts of this state. See particularly Chesterman v. Gardner, (5 J. C. R. 29;) Bates v. Delavan, (5 Paige 300;) Denston v. Morris, (2 Edw. Ch. R. 37;) Leggett v. McCarthy, (3 Ib. 124;) Withers v. Morrell, (3 Ib. 560.)
One other case in this state remains to be noticed. That of Banks v. Walker, (2 Sandford’s Ch. R. 344.) That was a bill to foreclose a mortgage given by the defendant to the plaintiff’s testatrix to secure a portion of the consideration money. One branch of the defence was, that an action of ejectment had been commenced by a person claiming by a title paramount to that under which the defendant held, and that the suits were at issue and pending when the bill was filed. The only difference between that case and the present is, that the purchaser in that case had taken no covenants to secure the title. But the decision was not put on that ground; on the contrary, the court held that it could make no difference whether there were covenants or not. The learned vice-chancellor examined the various cases on the subject, and came to the conclusion that there was no authority upon which he could sustain the defence, and that there was authority against it which was conclusive upon him. To which it may be added, that Chancellor Kent, in the last edition of his Commentaries, (vol. 2, p. 473,) lays down the rule as he had done in Bumpus v. Platner and Abbott v. Allen, and refers not only to them but to Banks v. Walker, as authority, while he takes no notice of Johnson v. Gere.
The only English case we have met with bearing directly on this point, is that of Thomas v. Powell, before Lord Eosslyn, in 1794, (2 Cox’s Oh. Cas. 394.) In that case, the real estate of a testator had been sold for the payment of his debts. A purchaser of one of the estates, to the amount of £14,000 and upwards, had entered into possession, approved of the title, and *123 accepted a conveyance. He had paid the purchase money into court, under the common order that it should not be paid out without notice to him. An application being made to the court for an order to apply this purchase money to the payment of the testator’s debts, the purchaser opposed it, on the ground that the tenants of the estate had been served with a writ of right, at the suit of a person who claimed the whole estate under an adverse title, and he insisted that the money ought not to be paid out of court during the pendency of the suit by which he might be evicted; that the court would at any time stop it for the purpose of doing' justice to the purchaser. To this it was replied, that though the purchaser would not be compelled to take a doubtful title, yet after the title had been accepted and the conveyance executed, the transaction was complete, and the court could not impound the money, on any apprehension of the purchaser; but if he were actually evicted, he must resort to the covenants in his deed. The Lord Chancellor, after some days’ consideration, said, the court having given the purchaser possession, and a conveyance under the title which he himself had approved, had done all it could for the purchaser, who could not be heard at that stage of the business to object to the application of the purchase money.
The principle of this case is in entire accordance with that of Banks v. Walker, while the facts are much stronger in favor of the purchaser than in that case, or in the case now before the court:
The ground on which the interference of the court is claimed in cases of this sort, after eviction, is, that it is manifestly unjust to compel a man by process of law to pay for that of which the law has deprived him. Whether the court will interfere, even in such cases, where the purchaser has taken no covenants for title, does not appear to be clearly settled, though the weight of authority seems to be against such interference. (Bates v. Delavan, 5 Paige 300.) And it would certainly seem to be contrary to established principles. Courts of equity do not make new contracts for parties, or relieve them from the effects of those which they have fairly and deliberately made. They will interfere in cases of fraud, of accident, or mistake, but then *124 it is on the ground either that there was no valid contract, or that the contract actually made, by reason of accident or mistake, is different from the real intentions of the parties. Li the one case, they declare the contract absolutely void: in the other, they make it what the parties originally intended it to be, if it can possibly be carried into effect according to their intent. But 'they never introduce a new stipulation into the agreement, and especially one which the parties themselves might have introduced had they thought proper. A striking illustration of this doctrine is to be found in the refusal to interfere in the case of an express covenant to pay rent, after the premises, in consideration of which the rent is agreed to be paid, have been destroyed by fire. It is well settled that a tenant can have no relief in such a case; that a court of equity is bound to put the same construction on such a covenant, and to give it the same effect that a court of law would do.
In the ordinary case-of a sale of land, the possibility that the title may fail, is a consideration that enters into the views of both purchaser and seller. If the purchaser does not wish to assume the risk of the title, he protects himself by covenants. If he assumes the risk, he accepts the deed without covenants, and receives his equivalent in the diminution of the price. When the very thing occurs, the hazard of which he has taken upon himself, and for which he has received an equivalent, it would be anything but equitable to restrain the collection of the unpaid purchase money. It would be throwing upon the seller, the very loss the risk of which he had declined to assume; and be making him, contrary to the intention of the parties, the guarantor of the title, at least to the extent of the sum due. (See Gouverneur v. Elmendorf 5 J. C. R. 79.)
Where there are covenants for title, however, courts of equity interfere upon another principle, viz. to prevent circuity of action. Indeed, it would seem that in such cases a total failure of consideration, even at law, might, upon the same principle, after eviction, be pleaded in bar to a suit to recover the consideration money. (Tallmadge v. Wallis. 25 Wend. 107, 116.)
If these views are correct, a court of equity ought not in any ease to restrain the collection of unpaid purchase money before *125 eviction; not where there are no covenants for the title, because relief could not be granted, even if eviction had taken place; nor where there are covenants, because the principle on which alone the court is justified in interfering, does not apply until after eviction.
There is also this further objection, which has been already alluded to. It would be varying in an important particular the contract of the parties. The purchaser in this case, promised to pay the purchase money at stipulated periods, and the seller covenanted, that if at any time the title should fail, and the purchaser be evicted by a paramount title, he would refund the purchase money with interest. The possibility that the title might fail, and the purchaser be evicted, was in the minds of the parties. They might also have provided, that in case of a claim being made by title paramount before actual payment of the consideration money, the right of the vendor to call for its payment should be suspended. But this they have not thought proper to do, and this court can with no more propriety add such a clause to the contract, and suspend the collection of the purchase money, than it can suspend the collection of rent expressly covenanted to be paid, upon the destruction of the buildings, where the parties have not themselves provided against it.
The court, moreover, if it interfere at all, must do so upon the simple fact of a claim having been made by suit, without reference at all to the character of the claim.
This court cannot try the title. Nor can it speculate upon the probabilities of the result of a suit, and grant or refuse relief according to a crude notion it might entertain as to the validity or invalidity of the adverse title. It is easy to see how dangerous the adoption of such a principle would be—what a temptation it would hold out to the bringing of actions by collusion in order to stay foreclosures, and how greatly it would affect the value of mortgage securities of this character.
Tliis decision may operate severely on the defendant in this case, and especially if the adverse claim shall turn out to be well founded ; but a contrary decision would operate with severity on the plaintiff, if the title shall prove good. He is, *126 moreover, only pursuing his legal remedy for a debt admitted to be due, while the defendant has all the protection for which she stipulated' in the event of the title proving defective. She has the covenants of the defendant, Gilchrist, who is, as she states in her answer, abundantly responsible; and she would also be entitled, in case of eviction, to the benefit of the covenants of the plaintiff, contained in his deed to Gilchrist.
We feel bound to say, that neither upon principle nor authority, can we interfere to stay the plaintiff’s proceedings in this case.
He is entitled to the usual decree for foreclosure and sale.