EDWARDS, impleaded with others, *appellants*, and BODINE, and others, *respondents*.

On a bill filed for the foreclosure of a mortgage given on the purchase of real estate, equity will not relieve the mortgagor on an allegation of *defect of title* as to *part* of the premises purchased, where the mortgagor, or person claiming under him, *entered into possession* on receiving the conveyance, and *continues in possession* without disturbance, where there is no pretence of *fraud*, and where the deed conveying the premises contains covenants of *seizin* and *warranty*.*

The principle of this rule of law is not affected by the Revised Statutes authorizing a decree *in personam* against the mortgagor, for any balance that may remain after a sale under the mortgage.

APPEAL from Chancery. The respondents filed a bill in chancery for the foreclosure of a mortgage. The defendants put in answers, showing the following state of facts: In *March*, 1835, John Bodine, senior, died seized of the mortgaged premises, having, in 1829, duly made and published his last will and testament, whereby he directed his *personal property*, except a portion bequeathed to his wife, to be sold at public sale, *by and at the discretion of his executors*, and the proceeds to be divided between his wife and *nine* children, share and share alike. Then followed a clause in these words: " And further, it is my will and I do order, that upon the decease or intermarriage of my aforesaid wife, or sooner, at any time after my decease, if it shall be thought best by my wife, my executors and children *generally*, to make sale of my farm, and of all my real estate, and turn the same into money, which, in such case, I am agreed to, and hereby authorize and impower to be done. Then be it known, that the moneys arising from the sale of my farm and all my real estate, I wish and direct to be equally divided between or among my wife and children above mentioned, subject as before stated to the deductions and provisions ordered to

* See Tallmadge *v.* Wallis, 25 Wendell, 107.

be made in relation to the parts of *John* and *Abraham*, (two of the children of testator,) share and share alike, to them, their heirs and assigns forever." By a subsequent clause, the testator directed *Abraham's* proportion of the moneys, to be put out at interest, and the same to be paid to him by the executors; and the *principal* to be paid to him in the *discretion* of the executors, as circumstances should require. In *August*, 1835, the executors named in the will of the testator, his widow, and *six* of his children, united in a conveyance of two tracts of land whereof the testator died seized, to *Abraham Varick*; the deed containing covenants of *seizin* and *warranty*. At the time of the conveyance, *three* of the children of the testator were dead, having died subsequent to the making of the will and previous to the decease of the testator, viz: *Abraham*, who died intestate and without issue; *John*, who died, leaving nine children, his lawful heirs; and *Nathaniel*, leaving six children, his lawful heirs; several of which heirs of John and Nathaniel, at the time of the putting in of the answers, were minors. *Varick* executed a *mortgage* to secure a portion of the purchase money, and he and *Edwards*, the appellants in this case, executed a *bond* as collateral security for the payment of the same. *Edwards*, under a contract with *Varick*, entered into *immediate possession* of the premises, and *continued in possession* at the time of the putting in of the answers. Edwards alleged that he had been *informed* and *believed*, that the heirs at law of *John* and of *Nathaniel*, the children of the testator, or some of them, *had set up a claim* to an undivided part of the premises conveyed to Varick; and that some of the said heirs had, therefore, *actually commenced proceedings* for the purpose of enforcing such claim; and he, therefore, insisted, that if such claim was valid, a deduction ought to be made from the amount claimed to be due on the mortgage to the extent of the interest of such heirs; and that such heirs were necessary and proper parties to be made *defendants* in the suit before a decree could pro-

perly be made for a sale of the *whole* of the mortgaged premises. The case was heard on bill and answers, and a decree made for the sale of the mortgaged premises, and for an execution against *Varick* and *Edwards*, for any deficit there might be after a sale. From this decree, Edwards appealed to this court, where the case was argued by:

1841.

Edwards
*v.*
Bodine.

*S. Stevens* and *O. Edwards*, for the appellant.

*J. Rhoades*, for the respondents.

*Points submitted and argued on the part of the appellant:*

I. The will of John Bodine, senior, conferred no authority upon his executors to sell his real estate. *Rathbone* v. *Wiltshire*, 4 *Mad.* 44. *Drayton* v. *Drayton*, 2 *Dessau.* 250, *n.* *Schoolbred* v. *Drayton*, *Dessau.* 246. *Sugden on Powers*, 172–3, (*edit. of* 1823.) *Touchstone*, 314. *Dyer R.* 219. *Mansell* v. *Mansell*, *Wilmot's Op.* *Wharton's Touch.*

II. Consequently Edwards and Varick acquired title only to three undivided fourth parts of the mortgaged premises, under the conveyance to them from the *six* children and executors of John Bodine, senior.

III. The defendants, Edwards and Varick, are therefore in equity only liable to pay three-fourths of the purchase money agreed to be given for the whole premises.

IV. The decree, therefore, instead of being that the defendants pay the whole amount of the purchase money remaining due, and that the whole of the mortgaged premises should be sold in default of such payment, should have been that defendants were only liable to pay three-fourths of the amount of such purchase money, and a reference to a master should have been ordered, with directions to ascertain and report the whole amount agreed to be paid for the premises, the amount paid down, and the amount paid since the giving of the mortgage—the aggregate of which amounts should be deducted from the three

1841.

Edwards
v.
Bodine.

fourths of the purchase money, and the decree against the defendants for the balance of the three-fourths of the purchase money only and the interest thereon, and three undivided fourth parts of the mortgaged premises only should have been directed to be sold in case such balance was not paid. *Johnson* v. *Green*, 2 *Johns. Ch. R.* 519. 2 *Id.* 546. *Reab* v. *McAlister*, 6 *Wendell*, 483. 8 *Id.* 109, *S. C. Ives* v. *Van Epps*, 22 *Id.* 155.

*Points submitted and argued on the part of the respondents*:

I. The mortgage set forth in the bill, in this cause, having been made to secure the payment of part of the purchase money of the mortgaged premises, which at the time the mortgage was made, were conveyed by the mortgagees to the mortgagor, with the usual *covenants and warranty*, and the mortgagor having entered into possession of the premises, under the title acquired by such conveyance, and continuing to hold under that title, he cannot, in a suit to foreclose such mortgage, or to obtain a sale for the satisfaction thereof, set up in defence, that such title is defective, and on that ground claim to be relieved from the mortgage. *Bumpus* v. *Platner*, 1 *Johns. Ch. R.* 213. *Abbot* v. *Allen*, 2 *Johns. Ch. R.* 519. *Lee* v. *Porter and Stiles*, 5 *Johns. Ch. R.* 268.

II. No defect in the title is shown. There is no allegation in the answer of the appellant, that the deed to Varick did not convey a good and perfect title. He merely says, that he has been *informed* and *believes* that the heirs at law of John Bodine, junior, and Nathaniel Bodine, or some of them, *have set up a claim* to an undivided part of the premises.

III. The conveyance to Varick by the executors of Bodine, with the consent of his widow and the six surviving children, was a valid execution of the power to sell, contained in the will.

After advisement, the following opinion was delivered:

1841.

Edwards
v.
Bodine.

By Mr. *Justice* BRONSON. Two of the children of John Bodine the elder, *John* and *Nathaniel*, died before their father, each leaving issue, and their children did not unite with the executors and six surviving children of John Bodine the elder in the deed to Varick. This, it is said, may affect Varick's title as to two-eighths of the property. The appellant says in his answer, he has been informed and believes that the heirs at law of John and Nathaniel, or some of them, have set up a claim to an undivided part of the premises, and that some of the heirs have actually commenced proceedings to enforce the claim; and he insists, that if the claim is valid a deduction should be made from the mortgage debt to the extent of the interest of those heirs. If any of the heirs had actually commenced a suit to recover a portion of the land the appellant would be quite likely to know it, for he has been in possession ever since the conveyance to Varick and the giving of the mortgage. No such suit is alleged in his answer, nor has he stated that he believes the heirs of John and Nathaniel have a valid claim, or that there is any defect whatever in the title of Varick. I very much doubt whether the appellant has made such an allegation in his answer, in relato the supposed defect of title, as would authorize the court of chancery to take any notice of the defence on which he relies. But waiving that consideration, and assuming for all the purposes of the defence, that the heirs of John and Nathaniel have a good title to an undivided fourth part of the property, that fact does not constitute a good defence to the proceeding to enforce payment of the mortgage debt. No fraud is alleged. If there is any defect of title in the mortgagor, it is the result of mutual mistake. Varick, or what is the same thing in legal effect, the appellant, with the consent of Varick, took immediate possession under the deed, and still continues in the undisturbed possession of the property. No one has brought any suit to question Varick's title, and as far as we can know, none will ever be brought. But should he ever be

1841.

Edwards
v.
Bodine.

disturbed he has an ample remedy on the covenants in the deed. More than. that, he might have sued before this time, and may still sue when he pleases, on the covenant of seizin. If there was a serious question about the title, and a suit had actually been commenced to recover a portion of the land, chancery might enjoin the respondents from proceeding at law to collect the whole amount of the mortgage debt, until the title had been tried. *Johnson* v. *Gere*, 2 *Johns. Ch. R.* 546. And in such a case, where the proceedings to collect the mortgage debt are commenced in chancery, that court might perhaps stay the foreclosure suit, until there had been a trial at law. But here, as I have already remarked, there is not and may never be a suit to call in question Varick's title. It is then, no answer, either for him or the appellant, to say peradventure the title may fail, and thus call on a court of equity to try in this collateral manner and without the proper parties a question which properly belongs to a court of law. If the purchaser has not been ousted, he must pay the mortgage debt, and take his remedy on the covenants in his deed should he ever be disturbed. The question has been settled in this state nearly thirty years, *Bumpus* v. *Platner*, 1 *Johns. Ch. R.* 213. *Abbot* v. *Allen*, 2 *Id.* 519. The fact that there may be now a decree *in personam*, as to any balance which may remain after a sale under the mortgage, does not alter the principle. *Leggett* v. *McCarty and Wife*, 3 *Edwards' Ch. R.* 124. There could be no doubt about the matter, if there had been no decision on the point since the Revised Statutes took effect. The principle laid down by Chancellor Kent is, that the alleged defect of title must be tried at law, and if the mortgagor remains in the undisturbed possession of the property, he must pay the mortgage debt. The creditors may resort to the bond as well as the mortgage, and there is no relief in equity. This covers the whole ground. I might discuss this matter upon principle, but I have thought it enough

to show how the question stands upon authority. I shall vote for the affirmance of the decree.

On the question being put, *Shall this decree be reversed?* all the members of the court present who had heard the argument answered in the negative. Whereupon the decree of the Chancellor was AFFIRMED.