STEPHEN M. JONES v. JOHN G. FULGHUM.

April Term, 1876.

PRACTICE—DEFENCE BEFORE SERVICE OF PROCESS.—A defendant may appear gratis and demur to a bill, without waiting until other defendants are served.

DEFECT OF TITLE NO DEFENCE TO ENFORCEMENT OF VENDOR'S LIEN, BUT IS TO A PERSONAL DECREE. — A defect of title is no defence to a bill to enforce the vendor's lien on land, and is, consequently, no ground for a cross-bill to rescind the sale; *aliter*, as to a personal decree for any surplus of purchase-money unsatisfied by a sale of the land.

DEFECT OF TITLE — REGISTERED MORTGAGES — LAPSE OF TIME. — The mere existence of registered mortgages on land, made by persons under whom the vendor claims, or by the vendor himself, is not sufficient to show a defect of title, where the lapse of time between the date of registration and the filing of the bill is sufficient to raise the presumption of a reconveyance.

DEFECT OF TITLE — PURCHASER IN POSSESSION UNDER AN EXECUTED CONTRACT. — A defect in the vendor's title is, in the absence of fraud, no sufficient ground for coming into equity, where the purchaser has not been disturbed in his possession, and no suit has been brought by the rightful owner.

DISCRETIONARY TRUST NEVER EXECUTED CANNOT BE AIDED. — Under his will, the testator authorized his executor named, "if and whenever he may think it advisable for the interest and benefit of my children," to sell any or all of his real estate, and vest the proceeds, "or such part thereof as he may think right," in other real estate, for the joint benefit of the testator's wife and children, "the part coming to my wife to revert to my children at her death." *Held*, that the wife took no title to the lands of which the testator died possessed, and that the power was personal and discretionary in the executor named, and, upon his refusal to qualify, could never be executed.

*Humes & Henderson*, for complainant.
*John P. Helms*, for defendant.

THE CHANCELLOR: — On September 12, 1870, complainant sold and conveyed to the defendant the lot on the corner of Cedar and Cherry Streets, in Nashville, with the building known as the Commercial Hotel, for $40,000, secured by four notes of $10,000 each, falling due on January 1, 1872, 1873, 1874, and 1875, respectively, and bearing interest as stipulated on their face. The conveyance was by deed in fee, with covenants of general warranty, seizin, possession, and against certain specified encumbrances. A lien for the payment of the purchase-money was expressly retained on the face of the deed. The defendant has paid the first two of these notes in full, and a

part of the third note. This bill was filed on March 28, 1876, to enforce the vendor's lien for unpaid purchase-money. The bill also sought to recover an increased rate of interest, subsequently agreed upon in consideration of forbearance in pressing collections.

The answer admits the sale and conveyance and payments as alleged, and claims additional payments. It objects to the claim for additional interest that the promise was without consideration, and void in law. It also sets up that one R. D. Spencer had recovered a judgment against Jones for a large amount, in the Circuit Court of Davidson County, upon which execution had issued, and a garnishment been served upon defendant; which he had, however, never answered, proceedings having been held up under an informal order of the district judge of the United States for this district. The defendant further claims to have been notified, on December 10, 1875, of the sale, by Jones, of the two purchase-notes now sued on, to one Vaccaro, of Memphis.

On June 1, 1876, the defendant files what he calls a cross-bill in this cause, against complainant, Thomas T. Smiley, Thomas Smiley, Alexander H. Smiley, and Emma Openheimer and her husband, Louis Openheimer. The bill states that on December 19, 1823, the will of one Robert G. Smiley, who had recently died, was admitted to record, and appointed an executor, who declined to act. The will contained this clause: "I hereby authorize and empower my executor, if and whenever he may think it advisable for the interest and benefit of my children, to sell and convey, for the best price and on the best terms he can, any or all of my real estate, and to vest the proceeds thereof, or such part thereof as he may think right, in other real estate, for the joint benefit of my wife and children, and the part coming to my wife to revert to my children at her death." Said Smiley left a wife, who is still living, and seven children him surviving, and owned

at his death the real estate on which the Commercial Hotel is situated, being the property in controversy. This land was not sold for any purpose under the will. Robert G. Smiley, a son of the testator, obtained, as early as 1847, in addition to his own share, the shares of four of the children, each one-seventh. In 1840, the sheriff levied an execution upon the share of defendant Thomas T. Smiley, and Robert G. Smiley became the purchaser; but the bill avers, upon information and belief, that defendant Thomas T. Smiley redeemed the same, by taking him into his office and furnishing him money as he needed it. In 1842, Thomas T. and R. G. Smiley made a joint deed of trust of their respective interest in the property, to secure a debt named, which was registered, but the records do not show a satisfaction or release. In 184-, A. H. Smiley, another son of testator, conveyed his undivided interest in the lot, in trust to secure certain debts. On October 1, 1850, Robert G. Smiley executed a mortgage on " said property;" and upon June 23, 1853, another mortgage. These instruments were registered, but there is nothing to show satisfaction or release. In 1854, the said Robert G. Smiley sold and conveyed the hotel property to John A. McEwen, and the latter, on ———— —, 185-, sold and conveyed to Stephen M. Jones. On July 18, 1867, the said Jones executed a deed of trust on the property, to secure a third person as his surety upon an injunction bond for $6,000, to be void if the debt should be paid within ninety days after judgment. "Complainant is not informed as to the result or *status* of said cause," but the records do not show satisfaction or release.

The bill alleges that at the time of complainant's purchase of the property from Jones, the latter represented that he had a perfect, clear, and indefeasable title, free from all defects and encumbrances, and he is informed and believes defendant knew the facts at the time of sale, while he (complainant) had no notice, except the constructive notice

of the register's books, of these defects. The complainant insists that neither he nor his vendor has a good title, and asks a rescission.

Jones has demurred to the cross-bill, assigning several causes of demurrer.

The complainant in the cross-bill objects to a hearing of the demurrer at this time, upon the ground that the *subpœna* was asked to be returned to the next term, and has not yet been served on some of the defendants. But I am not aware of any law or rule of practice to sustain the objection. Nearly a hundred years ago the point was made before Lord Thurlow, in *Fell* v. *Christ College*, 2 Bro. C. C. 279, that a party not served with process could not take any step in a cause, and that plain-spoken judge very promptly replied : " I have no notion that a party made a defendant to a bill of complaint in this court may not appear gratis, and get rid of the suit as soon as he can." This is good law, I take it, to the present day. And see *Bowhee* v. *Griggs*, 1 Dick. 38 ; *Barkley* v. *Lord Reay*, 2 Hare, 309 ; *Waffle* v. *Vanderheyden*, 8 Paige, 45.

The first ground of demurrer relates to the Spenser garnishment; but this matter, although mentioned in the answer, is not mentioned in the cross-bill. The cross-bill is, in form and substance, an independent pleading. The answer is not filed as a cross-bill under the statute. Curiously enough, too, the answer, while it mentions the Spencer garnishment, of which nothing is said in the cross-bill, does not say a word about the actual matters relied on in the cross-bill, leaving the latter pleading subject to the objection that it is not defensive. *Irving* v. *De Kay*, 10 Paige, 322. The demurrer, however, makes no point on this score.

The second ground of demurrer is that the cross-bill is exclusively based on defects of, or clouds upon, the title, and yet shows upon its face that the title is good.

The clouds and defects complained of, outside of the sup-

posed defect growing out of the bill of Smiley, consist of trust deeds or mortgages executed from 1842 to 1853 by some of the Smileys, and spread upon the register's books, and a deed of trust executed by Jones, complainant's vendor, on July 18, 1867, also registered; as to all of which it is averred that there is no record entry of satisfaction. The bill does not aver, as a matter of fact, that any of these encumbrances are really outstanding and subsisting, or that any claim is set up by any one under them. It does not deny knowledge by the complainant of their existence at the date of the purchase. It merely avers that complainant had no notice, except the constructive notice of the register's books, fairly implying that he had at least such notice as an examination of the register's books gave him. Nor does the bill aver any concealment of these facts by the defendant. It only charges that defendant Jones knew the facts, and represented that he had a perfect title, clear from defects and encumbrances. The cause of demurrer assigned, literally, only raises the question whether the facts as pleaded in the bill do not show a good title; but it also, in substance, raises the further question whether the defects relied on, if they exist, entitle the complainant to any relief in this court.

The facts alleged in the bill merely show that the register's books of this county disclose the existence of former trust-deeds and mortgages on the property sold, of more than seven years' standing, without registered satisfaction or release. It is the settled law of this state, that where a title to land is shown to have been perfected under the first section of our statute of limitations of seven years (act of 1819, ch. 28, sec. 1; Code, secs. 2763, 2764), and the right of adverse claimants extinguished by the operation of the act, it is a good title, and such as the vendee under an executory contract of sale would be compelled to accept, upon a bill by the vendor for specific performance. *Goss* v. *Singleton*, 2 Head, 79; *Mullins* v. *Aiken*, 2 Heisk. 545.

*A fortiori*, would such a title be conclusive upon a vendee who has accepted and gone into possession under an absolute deed with covenants. *Buchanan* v. *Alwell*, 8 Humph. 516; *Barnett* v. *Clark*, 5 Sneed, 435. *Primâ facie*, the mere lapse of time sufficient to create the bar perfects the title. For the statute runs in favor of the mortgageor or grantor in possession, where there is no stipulation in the instrument providing for or legally recognizing such possession, because the possession is in such cases adverse. *Lawrence* v. *Bridleman*, 3 Yerg. 496. So, an equity, or lien is barred where the possession, being by legal title, is adverse. *Sheratz* v. *Nicodemus*, 7 Yerg. 9. The principle was extended to the possession of a purchaser under bond for title, in *Ray* v. *Goodman*, 1 Sneed, 587; but this case was overruled by *Gudger* v. *Barnes*, 4 Heisk. 570, upon the ground that the possession of the vendee was not adverse to the vendor's lien when it was taken under an instrument recognizing the lien. And so the statute law now expressly provides. Code, sec. 2768. Prior to the Code, the statute did not run in favor of the mortgagee against the mortgageor upon another ground, the remedy of the mortgageor being purely the creature of equity, and there being no statute in such cases. *Overton* v. *Bigelow*, 3 Yerg. 513. Moreover, the rule is general that a trust estate terminates when the purpose for which it was created is accomplished. Perry on Tr., sec. 312; *Aiken* v. *Smith*, 1 Sneed, 304. The payment, therefore, of the debt secured by a trust or mortgage extinguishes the instrument as a muniment of title, and revests the legal title in the grantor. *Carter* v. *Taylor*, 3 Head, 30, and *Nichols* v. *Cabe*, 3 Head, 92. And a conveyance or surrender of the legal estate by the trustee or mortgagee will, even at law, be presumed after a reasonable time in favor of a just title. *Marr* v. *Gilliam*, 1 Coldw. 498; *French* v. *Edwards*, 21 Wall. 147; *Manice* v. *Manice*, 43 N. Y. 203. I am of opinion that the mere existence on the register's books of the instruments mentioned in the bill is not, in view of the lapse of time which

is shown to have occurred since their creation, sufficient to cast a doubt over the complainant's title. *Leverton* v. *Waters*, 7 Coldw. 24. The complainant ought to go further, and show an actual claim set up under them, or such facts as demonstrate a real encumbrance.

The equity of the cross-bill, conceding its full force, is that neither the complainant nor his vendor has a good title, owing to the encumbrances mentioned. But the authorities are uniform that a defect of title is no defence to a bill to enforce the vendor's lien, or to foreclose a mortgage given on the land to secure the purchase-money. *Hurley* v. *Coleman*, 2 Head, 265; *Curd* v. *Davis*, 5 Heisk. 574; *Patton* v. *Taylor*, 7 How. 133; *Miller* v. *Avery*, 2 Barb. Ch. 582; *Edwards* v. *Bodine*, 26 Wend. 109; *Hulfish* v. *O'Brien*, 5 C. E. Green, 230. The reason is that the vendor is only seeking to reach what he has sold, and it is a matter of no consequence to the defendant whether, to that extent, the title is good or not. The court may, however, upon such defence successfully made, decline to give a personal decree for any surplus of purchase-money remaining unsatisfied after the sale. *Withers* v. *Morrell*, 3 Edw. Ch. 562; *Hurley* v. *Coleman*, 3 Head, 266. To that extent a cross-bill would seem to be maintainable, as intimated by our court in the last named case. But a rescission of the whole contract by reason of such defect of title is not a defence to the enforcement of the lien, and is matter for an original, and not a cross-bill. And an original bill for rescission will not lie where there is no fraud. *McNew* v. *Walker*, 3 Humph. 186. And it seems to be a matter of course in England, upon a bill by the vendor for specific performance, where the defence is defect of title, to order the purchase-money to be paid into court, or the defendant to surrender possession, for the obvious reason that he should not keep both the land and the purchase-money. *Tindal* v. *Cobham*, 2 Myl. & K. 385; *Cutter* v. *Simons*, 2 Mer. 103.

It is said by our Supreme Court, in *Napier* v. *Elam*, 6

Yerg. 117 : " If there is a covenant for title, and the possession of the vendor undisturbed by suit, the better opinion is that there is no remedy to enjoin the collection of the unpaid purchase-money ; yet the authorities on this head of equity jurisdiction are by no means uniform. Slight circumstances have been seized upon to afford relief." Citing 2 Johns. Ch. 523; *Bumpus* v. *Platner*, 1 Johns. Ch. 213; 1 Ves. 126 ; Belt's Supp. 81. Chancellor Kent is said to have contributed to the want of uniformity in the decisions on the point suggested. In *Bumpus* v. *Platner*, this eminent judge thought it might safely be said that there is no case of relief on the ground of defect of title " when possession has passed and continued, without any eviction at law under a paramount title." In *Abbott* v. *Allen*, 2 Johns. Ch. 519, where the vendee, in possession under a deed with covenants of seizin and general warranty, filed a bill for an injunction against the enforcement of a mortgage on the land, given by himself to secure the purchase-money, the chancellor said : " It would lead to the greatest inconvenience, and perhaps abuse, if a purchaser in the actual enjoyment of land, and when no third person asserts, or takes any measure to assert, a hostile claim, can be permitted, on suggestion of a defect or failure of title, and on the principle of *quia timet*, to stop the payment of the purchase-money, and all proceedings at law to recover it. Can this court proceed to try the validity of the outstanding claim in the absence of the party in whom it is supposed to reside, or must he be brought into court against his will, to assert or renounce a title which he never asserted, and perhaps never thought of ? I apprehend there is no such practice or doctrine in this court ; and that a previous eviction, or trial at law, is, as a general rule, indispensable." But in *Johnson* v. *Gere*, 2 Johns. Ch. 546, and only a few months after the elaborate consideration of the question in *Abbott* v. *Allen*, Chancellor Kent, upon an *ex parte* application, granted an injunction in precisely the

same character of case, upon the allegation of an action of ejectment actually commenced by a third person for the land, distinguishing the case from those in which there was only an allegation of an outstanding title, and no disturbance, prosecution, or eviction thereon. In *Banks* v. *Walker*, 2 Sandf. Ch. 349, the assistant vice-chancellor, Sandford, while commenting on this case, and declining to follow it, calls attention to the fact that Chancellor Kent, in his Commentaries (2 Com. 471), expresses the rule on the subject as he had laid it down in *Abbott* v. *Allen*, and does not cite *Johnson* v. *Gere*. And Chancellor Walworth, in reviewing the same case, in *Miller* v. *Avery*, 2 Barb. Ch. 594, suggests that the reporter must have made a mistake in the statement of the case, or that the chancellor overlooked the fact that it was not alleged in the bill that the complainants even believed their title to the land was defective. "For it cannot be possible," he adds, "that he intended to decide that a mere claim of a paramount title by a third person, and the bringing of a suit upon that claim against the purchaser, was sufficient to authorize the court to stay the vendor, who had warranted the title, from proceeding, at law or in equity, to collect the unpaid purchase-money." Whether, he goes on to say, a state of facts showing a good outstanding title, and the actual commencement of a suit upon it, would, before eviction, authorize the vendee, under a warranty deed, to come into equity, where the vendor was solvent, "is at least doubtful." "It is sufficient to say," he adds, "that it has frequently been decided that the mere fact of a failure of title in the vendor affords no sufficient ground for coming into this court for relief, where the purchaser has not been disturbed in his possession, and no suit has been brought against him by the rightful owner. (Citing *Bumpus* v. *Platner*, 1 Johns. Ch. 218; *Woodruff* v. *Bunce*, 9 Paige, 443; *Withers* v. *Morrell*, 3 Edw. Ch. 560; *Edwards* v. *Bodine*, 26 Wend. 109.) And it is equally clear that the mere bringing of an ejectment suit against

the grantee of lands by persons claiming to have a title paramount to that of the grantor, *without establishing the fact that the plaintiff in the ejectment suit is the real owner of the land,* affords no sufficient ground for coming into this court for relief against an action at law for the recovery of the unpaid purchase-money due to the vendor of the land. Nor is it a valid defence to a suit in this court for the foreclosure and satisfaction of a bond and mortgage given for the purchase-money upon a sale of the land."

The true rule of equity is indicated in the words which I have underscored in the language just quoted. The vendee cannot come into this court for relief, when he is in possession under a deed with covenants of warranty, even where suit has been brought for the land by a third person, unless his facts as alleged show that the plaintiff is the real owner, and brings his case, moreover, within the *quia timet* jurisdiction of the court. *Baird* v. *Goodrich*, 5 Heisk. 24; *Thomas* v. *Powell*, 2 Cox Ch. 394. The authorities seem to be uniform that there must be an actual suit pending. To the cases already cited to this point may be added *Shannon* v. *Marselis*, Saxt. 426; *Waggoner* v. *McEwen*, 1 Green. Ch. 412; *Refeld* v. *Woodfolk*, 22 How. 318; *Van Lew* v. *Parr*, 2 Rich. Eq. 321; *Glenn* v. *Whipple*, 1 Beas. 50. To allow such a bill, except in a very exceptional case, upon an outstanding title neither set up by suit nor otherwise claimed, would be to hold out a premium to barratry and champerty. *Whitworth* v. *Stuckey*, 1 Rich. Eq. 409. Nor is the rule any hardship upon the purchaser, where, as in this case, there are covenants of seizin; for the validity of the title may be tested at law by a suit upon the covenant. *Patterson* v. *Miller*, 4 Jones Eq. 451.

Fraud is, of course, an independent ground of jurisdiction. For, if the purchaser has been imposed upon in the original sale by any intentional misrepresentations or concealments to his injury, he may have redress in equity, in addition to and beyond his covenants. *Napier* v. *Elam*, 6

Yerg. 117; *Woods* v. *North*, 6 Humph. 309; *Harding* v. *Nelthrope*, Nels. 118; *Edwards* v. *McLeay*, Coop. Eq. 308; *s. c.*, 2 Swanst. 287. And if the vendor seek to enforce his lien by bill, the defendant may make the defence of fraud by cross-bill. *O'Brien* v. *Hulfish*, 7 C. E. Green, 471; *Wickliffe* v. *Clay*, 1 Dana, 589. But there are no facts alleged in this case which show fraud. *New Brunswick & Canada R. Co.* v. *Conybeare*, 9 H. L. 711. That the vendor knew of the mortgages and trust-deeds, and represented his title as clear and indefeasible, would not constitute fraud, for both averments might be true. The bill should have shown that they are existing encumbrances, and that they were kept concealed from complainant intentionally, intent being the essence of fraud. *Wilde* v. *Gibson*, 1 H. L. C. 605, 625; *Legge* v. *Croker*, 1 Ball & B. 506. And at least that complainant believes his title to the land to be defective. The averment of the bill, that complainant had no notice, not of the encumbrances, but the facts embodied in them, except the constructive notice of the register's books, contains a negative pregnant. that he had all the notice which the register's books gave, and that is enough to do away with all imputation of fraud, in the absence of facts. *Hume* v. *Pocock*, L. R. 1 Ch. App. 379.

What we have already said about the alleged encumbrances equally applies to the supposed interest of the widow of the testator, Smiley, under the will probated on December 19, 1823, — more than half a century ago. In addition, the learned counsel for the complainant has not undertaken to show what interest the widow of the testator took under the clause of the will quoted in the bill. He has simply made his argument upon the supposition that the will gave her a life-interest in the whole, or, at any rate, a child's part of the land in controversy. But the clause in question gives the widow no interest whatever in any of the lands of which the testator died seized or pos--

sessed.   *Hope* v. *Johnson*, 2 Yerg. 123.   It only clothes
the executor named in the will with a discretionary power,
"if he may think it advisable for the interest and benefit
of the children," to sell any of those lands, and to vest
"such part thereof as he may think right," for the joint
benefit of wife and children.   The only interest of the wife,
under the will, is in such lands as the executor may choose to
buy with the proceeds of sales made under the power.   The ex-
ecutor, however, refused to qualify, never, of course, exercised
the power, and no other person either could or did exercise
it.   It was left to the judgment and discretion of the par-
ticular individual named, not only whether he would sell
any part of the lands, but whether, if he did sell, he would
vest any portion of the proceeds "for the joint benefit of
wife and children."   The power to sell, in the first instance,
was purely discretionary; the *quantum* of investment after
he did sell was equally discretionary.   The individual se-
lected might well avoid such a responsibility.   The power
was obviously personal and discretionary, over which the
courts have no control.   *Belote* v. *White*, 2 Head, 703;
*Deadrick* v. *Armour*, 10 Humph. 588; *Fontain* v. *Ravenel*,
17 How. 369; *Nichols* v. *Eaton*, 91 U. S. 716; *Lancashire*
v. *Lancashire*, 2 Phill. 657; *Hibbard* v. *Lamb*, Amb. 309;
*Down* v. *Worrall*, 1 Myl. & K. 561; *Pink* v. *De Thuisey*,
2 Mad. 187; *Cole* v. *Ward*, 16 Ves. 27; *Robson* v. *Flight*,
4 De G. J. & S. 613; *Greer* v. *McBeth*, 12 Rich. Eq.
254.   And it is an inflexible rule that the non-execution of
a power will not be aided.   *Tomkin* v. *Sandys*, 2 P. W.
227, note; *Tollet* v. *Tollet*, 2 P. W. 489; *Brown* v. *Higgs*,
8 Ves. 570; *Meredith* v. *Heneage*, 1 Sim. 554; *Holmes* v.
*Coghill*, 12 Ves. 215.

The statute of limitations has long since barred any right
of action of Thomas T. Smiley and the heirs of A. H.
Smiley, the other defendants to the cross-bill, if there is
no existing life-estate in the widow.   I am of opinion,
therefore, that the second cause of demurrer to the cross-
bill is well taken, and dismiss the bill, with costs.