HENRY COHEN and wife *vs.* W. T. & J. A. WOOLLARD.

## October Term, 1876.

VENDOR'S LIEN—DEFECT OF TITLE—PERSONAL DECREE.—A defect of title to land sold is no defence to a bill to enforce the vendor's lien for unpaid purchase money, though it is to a personal decree against the vendee; and, therefore, a rescission of the contract because of the defect of title is matter for an original and not a cross-bill.

LAND—DESCRIPTION NECESSARY TO IDENTIFY—STATUTE OF LIMITATIONS.— The vendor of land, and those under whom he claimed, had been in possession for many years, and long enough to extinguish adverse titles by the statute of limitations, under deeds describing the land thus: "Part of lot No. 24 in the college plan of lots, fronting thirty feet on Cherry street, and running back towards College street 180 feet, and being the same lot conveyed to me by," etc., by deed of record, etc. *Held*, that the description was sufficient to identify the land so as to create the bar of the statute, although lot No. 24 was shown to be much larger than the land described.

*G. B. Guild,* for complainants.
*A. G. Merritt,* for defendants.

THE CHANCELLOR:—On the 4th of November, 1870, the complainants Cohen and wife sold to the defendants "part of lot No. 24 in the college plan of lots, fronting thirty feet on Cherry street, and running back towards College street 180 feet, and being the same lot conveyed to me by Levi Moses, by deed of record in the proper office, in book No. 28, page 14." Besides the covenant of general warranty of title, the deed contains covenants of seizin and possession, of the right to convey, and against encumbrances. The deed also recites a consideration of $2,500, of which $500 were paid in cash, and the residue secured by three notes

of the date of the conveyance, at ten, twenty, and thirty months from date, for $666.66 2-3 each, and expressly retains a lien on the land for their payment. The defendants went into possession of the land at once, and have remained in possession since.

On the 18th of September, 1872, the original bill was filed to enforce the lien thus retained for the satisfaction of the last two notes, the first of them having been paid. On the 18th of April, 1873, the defendants answered, and on the same day filed a cross-bill asking a rescission of the sale on the ground of fraudulent representations of the complainants that their title to the land was good, when in fact they had no title. The statement is that the title is in the heirs of one Hardin P. Bostick, and that seventeen inches of one side of the lot has been in the adverse possession, since the year 1867, of one Beadle.

The evidence taken in the cause shows that the defendants were mistaken in supposing that any part of the lot sold was in possession of Beadle, and that branch of the defence is abandoned in argument. The evidence is equally satisfactory that no fraudulent representations were ever made as to the title ; that the title papers were submitted to the defendants, probably before the sale, and were certainly delivered to them immediately on the completion of the trade. The learned counsel of the defendants is driven to rest his client's case on an alleged want of title, growing out of the fact that no deed is proved to have been executed by one of the parties through whom the title is traced, and that possession alone has not perfected the title, although continuous for over twenty years certainly, and probably over thirty years, because the land is not sufficiently described in the assurances of title under which it has been held, and has not been actually enclosed.

The authorities are uniform that a defect of title to land sold is no defence to a bill to enforce the vendor's lien, or to foreclose a mortgage on the land given by the vendee to secure the purchase money. *Hurley* v. *Coleman,* 3 Head,

265; *Curd* v. *Davis*, 5 Heisk. 574; *Miller* v. *Avery*, 2
Barb. Ch. 582; *Edwards* v. *Bodine*, 26 Wend. 109; *Hulfish*
v. *O'Brien*, 5 C. E. Green, 230. The reason is that the
vendor is only seeking to reach what he has sold, and it is
a matter of no consequence to the defendant whether, to
that extent, the title is good or not. The court may, how-
ever, where there is a defect of title, decline to give a per-
sonal decree against the vendee for any part of the purchase
money remaining after exhaustion of the realty. *Withers*
v. *Morrell*, 3 Edw. Ch. 562; *Hurley* v. *Coleman*, 3 Head,
266. To that extent, the prevention of a personal judg-
ment, the defence of want of title is admissible in proper
cases, and, if necessary to render it available, a cross-bill
may be filed as intimated in the last-named case. But a
rescission of the whole contract for a defect of title is not a
defence to the enforcement of the lien, and is a matter for
an original and not a cross-bill.

Where the purchaser of land under a deed with covenants
of title is in possession of the land bought, undisturbed
by suit, the authorities are equally uniform that a defect of
title is no ground for enjoining the collection of the pur-
chase money at law, and no defence to a suit in this court
for the enforcement of the vendor's lien, or the foreclosure
of a mortgage on the land given by the vendee to secure
the purchase money. *Senter* v. *Hill*, 5 Sneed, 505; *Napier*
v. *Elam*, 6 Yerg. 117; *Abbott* v. *Allen*, 2 Johns. Ch. 519;
*Miller* v. *Avery*, 2 Barb. Ch. 594; *Banks* v. *Walker*, 2
Sandf. Ch. 349; *Glenn* v. *Whipple*, 1 Beas. Ch. 50. "It
would lead," says Chancellor Kent, in *Abbott* v. *Allen*, "to
the greatest inconvenience, and perhaps abuse, if a pur-
chaser in the actual enjoyment of land, and when no third
person asserts, or takes any measure to assert, a hostile
claim, can be permitted, on suggestion of a defect or failure
of title, and on the principle of *quia timet*, to stop the pay-
ment of the purchase money. Can this court proceed to
try the validity of the outstanding claim in the absence of
the party in whom it is supposed to reside, or must he be

brought into court against his will, to assert or renounce a title which he never asserted, and perhaps never thought of? I apprehend there is no such practice or doctrine in this court." "It has frequently been decided," says Chancellor Walworth, in *Miller* v. *Avery*, "that the mere fact of a failure of title in the vendor affords no sufficient ground for coming into this court for relief, where the purchaser has not been disturbed in his possession, and no suit has been brought against him by the rightful owner." Citing *Bumpass* v. *Platner*, 1 Johns. Ch. 218; *Woodruff* v. *Bunce*, 9 Paige, 443; *Withers* v. *Morrell*, 3 Edw. Ch. 560; *Edwards* v. *Bodine*, 26 Wend. 109. To allow such a bill, unless in a very exceptional case, upon an outstanding title, neither set up by suit nor otherwise claimed, would be to introduce a new principle, and to offer a premium to barratry and champerty. *Ryland* v. *Brown*, 2 Head, 275. Nor is the rule any hardship upon the purchaser, where, as in this case, there is a covenant of seizin; for the validity of the title may be tested at law by a suit upon the covenant.

It is very clear, therefore, that the defect of title complained of, if it actually exist, is no defence to the collection of the purchase money, either at law or in this court. The complainants are entitled to the relief prayed in their bill, and the cross-bill, as a defence, must be dismissed with costs.

But the so-called cross-bill is, in reality, an original bill, so far as it seeks a rescission of the contract, or relief by reason of a breach of any of the covenants to the bond on which suit may be brought before eviction, such as the covenant of seizin. The defendants might have demurred to it because it was an original bill under the cloak of a cross-bill; or, if they chose to treat it as an original bill, might have answered the charge of fraud, and demurred to the residue on the ground that the remedy was at law. The defendants were, however, aware of the fact, and say, in their answer, that they prefer to meet the question in this court, and have the rights of all parties adjudicated here. In this view, the question of fraud being removed by the proof, the rights of

44

the complainants in the cross-bill turn upon the point whether there has been a breach of the covenant of seizin ; and this depends upon the validity of the complainants' title at the date of their deed.

The facts are, as stated by the Woollards in their cross-bill, that a regular chain of title may be deraigned from the grant, in 1794, to H. P Bostick, assignee in bankruptcy, in 184–. The deed of Cohen and wife to the Woollards describes the lot as being the same conveyed by Levi Moses to complainant Henry Cohen, by deed duly registered. This latter deed bears date the 17th of May, 1858, describes the lot as in the conveyance of Cohen and wife, adding, " being the same bought by me of Hardin P. Bostick, assignee in bankruptcy, on the 28th of December, 1844." The Woollards admit that Cohen delivered to them, as one of his title papers, an instrument of some sort for this land, purporting to be executed by H. P. Bostick, and which they filed as evidence of their title in an action of ejectment brought by them against a third person for what they claimed to be a portion of the lot in controversy, and that the instrument was in that suit mislaid and lost. The exact contents, character, and purport of this instrument are not remembered by the parties, and are not proved. It was never registered, nor does it seem to have been probated or attested, so as to be capable of registration. The possession of the Cohens, under the deed from Moses, seems to have been continuous and uninterrupted from its date, and the possession of Moses equally so under the Bostick instrument from its date. The seven years' bar of the statute of limitations took effect under the Moses deed before the passage of the act of the 30th of May, 1865, suspending the operation of the statute.

Seven years' continuous adverse possession of granted land, by a person and those through whom he claims, under an assurance of title purporting to convey an estate in fee, without any claim by action at law or in equity commenced within that time and effectually prosecuted, vests the possessor with a good and indefeasible title in fee to the land

described in the assurance of title. Code, § 2763. This is strictly true only where the claimant rests under no disability at the commencement of the adverse possession, and no such disability is shown in this case. The effect of the statute is to extinguish the adverse claim by operation of the statutory bar, and the title thus acquired is such as a vendee would be compelled to accept under an executory contract of sale. *Goss* v. *Singleton*, 2 Head, 79; *Mullins* v. *Aikin*, 2 Heisk. 545. *A fortiori*, would such a title be conclusive upon a vendee who has accepted a deed, and gone into possession under it. *Buchanan* v. *Alwell*, 8 Humph. 516; *Barnett* v. *Clark*, 5 Sneed, 435. It is clear, therefore, that the Woollards have, and the Cohens had at the date of their sale and conveyance to them, a good and indefeasible title in fee to the land " described in the assurance of title."

But, says the learned counsel of the Woollards, the land is not sufficiently described in the assurances of title to give title to the particular land in controversy, and, therefore, there is nothing for the statute to operate upon. The defect, according to the argument, is not in the actual description—30 by 180 feet in a particular locality—but in the sufficiency of the details to identify the exact 30 by 180 feet in controversy. Nor, although the authorities cited (*Dobson* v. *Litton*, 5 Coldw. 616, and *Solomon* v. *Thatcher*, at Knoxville, 1876) apply exclusively to an executory contract between the parties, is the position that the Woollards have not a sufficient deed in its description of the land, so far as they are concerned; for they, having accepted the deed, and gone into possession under it, are estopped to deny its sufficiency in this regard. But the point made is, that the description is not sufficient to identify the particular land, so as to extinguish, under the statute, the title of adverse claimants. The supposed defect in the description is in the identifying words " being part of lot No. 24 " in a particular plan, which lot, the proof shows, is much larger than 30 by 180 feet, and, therefore, the argument is, you cannot identify the particular 30 by 180 feet intended.

Assuming the correctness of this position, the learned counsel concedes that the defect in the identification might be supplied by the Bostick instrument, the Moses deed describing the land as "being the same bought by me of Hardin P. Bostick, assignee in bankruptcy, on the 28th of December, 1844." He insists, however, that this link fails by reason of the fact that this instrument was never registered, and the further fact that it is not shown to have contained the description necessary to supply the defect. But the law is well settled that the statute of limitations will operate, although the assurance of title under which possession is held be not registered. *Stewart* v. *Harris*, 2 Swan, 656; *Jones* v. *Perry*, 10 Yerg. 81; *Mulloy* v. *Paul*, 2 Tenn. Ch. 156. And the Bostick instrument was filed by the Woollards, as they admit, in the action of ejectment in which it was lost, as a muniment of their title, and the presumption is, not only that it was an assurance of title within the meaning of the statute—for otherwise it would not have been used—but that it contained the missing identification of the land, without which, on their own assumption, they had no title, and could not have maintained an action. The instrument having been lost by them, the burden of proof rests on them to remove these obvious presumptions, which they have wholly failed to do.

Besides, I am unable to concur in the assumption that the description in these deeds is insufficient to identify the land. "It is a common learning in the law," says Perkins, in his legal classic on Conveyancing, "that a man cannot grant or charge that which he hath not." Sec. 65. And, therefore, if one grant 30 by 180 feet, part of a particular lot, and hath only 30 by 180 feet of that lot, it is enough; especially if he add, being the same conveyed to me by a certain deed, for that is equivalent to saying, "being my land in that lot, which I hold under" the deed. "Levied on John Doak's seventy-acre tract of land on the waters of the west fork of Stone's river" is a good levy. *Parker* v. *Swan*, 1 Humph. 80. And a sale by John Doak of "my seventy-acre tract

of land on the waters of the west fork of Stone's river "
would be equally good. What both Moses and Cohen and
wife say in their respective deeds is, in effect, that each
conveys a lot of defined boundaries, now and heretofore
held under particular assurances of title. If the agreement
or deed describe the premises as " my tract of nine acres
and sixty-six poles, near," etc., it is sufficient on its face.
*Dobson* v. *Litton*, 5 Coldw. 619. So, if it say " my 30 by
180 feet, part of," etc., or " the 30 by 180 feet, part," etc.,
conveyed to me by a certain person ; for it is equivalent to
saying, the lot now held by me answering to the description.
*Simmons* v. *Spruill*, 3 Jones Eq. 9.

The bill of the Woollards must, therefore, be also dis-
missed so far as it is an original bill, with costs.