SHIRE v. PLIMPTON et al.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

1. MORTGAGE—CONSTRUCTION.
An agreement in a purchase-money mortgage that a certain part of the money secured thereby should not be payable till title to a certain part of the land. was perfected cannot be extended to include another defect in the title to another part of the land, not known of at the time of the agreement.

2. SAME—FORECLOSURE.
It is no defense to the foreclosure of a purchase-money mortgage that the mortgagor, in executing it, relied on a title search furnished in good faith by the mortgagee, purporting to show good title, when there was a partial defect of record title, where the mortgagor is in undisturbed possession, and there has been no breach of the covenant of warranty in the deed, and the deed contains no covenant of seisin, breach of which could be pleaded as a counterclaim.
Spring and Williams, JJ., dissenting.

Appeal from special term, Erie county.
Action by Moses Shire, trustee, against George A. Plimpton and another, to foreclose a mortgage. From a judgment for plaintiff, defendants appeal. Affirmed.

On the 13th day of February, 1892, Adeline C. Elder, the plaintiff's assignor, contracted in writing with the defendant George A. Plimpton to convey to him the premises known as "No. 122," on the westerly side of Linwood avenue, in the city of Buffalo; being 50 feet front and rear, by 140 feet in depth. The agreement recited that the consideration was $13,000; that $100 thereof had been paid; that the remainder was to be paid as follows: $400 on the delivery of the deed, $7,000 by the vendee's assuming payment of a mortgage then a lien on the premises, and the remaining $5,500 by his giving a bond, secured by a purchase-money mortgage, conditioned for the payment of $2,000 on or before August 13, 1892, and $3,500 on or before February 13, 1894, with interest semiannually. By the terms of the agreement, the vendor was to furnish full tax and title searches and to convey by a good and sufficient deed, containing a covenant of warranty; but no time for performance was specified. The vendor thereafter furnished an abstract of her title, which showed that the four daughters of William Kaene, all of whom are living, had title to an undivided half of the frontage of said premises, to the depth of 45½ feet; having derived such title by will from their father, who died on the 22d of September, 1852. The vendee objected to the title upon this ground. The vendor having encountered some difficulty in obtaining title from said devisees, and being desirous of receiving part of the purchase price, suggested that the vendee consummate the purchase upon an agreement that would protect him against such outstanding title. It was thereupon agreed that the vendor should execute and deliver such a deed; that the purchaser should pay $2,400 in cash, and give back a purchase-money mortgage and bond for the balance (being $3,500) not paid in cash or by the assumption of said mortgage; that the bond and mortgage should expressly provide that $1,000 was to be paid in two years, and the remaining $2,500 as soon thereafter as the grantor should succeed in perfecting title to said Linwood avenue frontage, which she agreed to do as soon as practicable; that the said $2,500 should not become due and payable until the title was perfected in that regard, but that the grantee should pay interest in the meantime; that, if the vendor should not be able to perfect such title within five years, the vendee should be at liberty to do so, the expense to be deducted from the final payment; and that in case suit should be brought by said devisees, or by parties succeeding to their interest, the grantee's costs, damages, or expenses thus incurred or suffered were to be deducted from such final payment. On the 31st day of October, 1892, papers were executed and exchanged in accordance with the original contract as modified by this agreement, and the defendants took possession of the premises under the deed, and have ever since been, and still remain, in the undisturbed possession thereof. It was subsequently discovered by the grantor that said Kaene had conveyed all his right, title, and interest in said Linwood avenue frontage, and that such title was then owned by the heirs of George H. Derby. Thereafter, and on the 15th day of November, 1897, the grantor procured title to be perfected in the grantee as to said frontage; and she also procured to be delivered to him a new and correct search, which, however, showed an additional defect in the title, in that Kaene's said daughters, as his devisees, held title to an undivided half of a rectangular strip of said premises, 10 feet in width, and extending 22 feet along the northerly line of the lot, nearly midway between the front and rear, and upon which part of the dwelling house stands. This rectangular strip comprises less than one-thirtieth of the lot, and has no frontage or outlet upon any street or public way. It appears that Kaene owned a large tract of land in this vicinity, and, in conveying off the Delaware avenue frontage in 1852, he omitted this rectangular strip, in the expectation that Franklin street would be extended northerly and include the same; and in the deed he bounded the premises on the rear easterly by the westerly line of the proposed extension of Franklin street, which was the westerly line of the premises in question, then owned by him. On the 25th day of August, 1868, David Bell, who then owned and occupied the entire premises, extending from Delaware avenue to Linwood avenue, subject to this defect, obtained a deed from Kaene's widow, purporting to convey the entire interest of said Kaene, for the purpose of correcting the error. Bell supposed that this cured the defect, but it is conceded that it conveyed only an undivided half,—that being the grantor's interest,—and did not convey the

interest devised to the daughters. Bell and his grantees have apparently in good faith been in possession for upwards of 30 years, claiming the full title, and believing that their record title was perfect. During this time the premises have been inclosed and occupied as a private residence, and the daughters of said Kaene, the youngest of whom was 17 years of age at the time the interest vested in them in 1852, have made no claim of any interest therein or title thereto.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

John L. Romer, for appellants.

Moses Shire, for respondent.

LAUGHLIN, J. This action was brought to foreclose the mortgage. It is alleged in the answer that the vendee relied on the original search in thus consummating the contract, and that; if this defect had been shown in the original search, it would have been provided for in the agreement under which defendant took title. The court is asked to decide that it is included in such agreement, or to reform the bond and mortgage by including it. The defendants do not interpose a counterclaim for damages for breach of contract, and they make no allegation or claim of fraud; but they seek to prevent the foreclosure of the mortgage until plaintiff removes this alleged defect in title, which they say in their answer, and gave evidence tending to show, depreciates the market value of the premises at least $500, and probably more. The court doubtless intended to find good title by adverse possession under a claim of title, and the uncontradicted testimony would have warranted such finding; but the finding on that subject, as made, is not sufficient to constitute a finding of adverse possession. If it were material, we might, for the purpose of sustaining the judgment, presume that the court found the facts essential to constitute adverse possession; there being ample evidence to warrant such finding. Bennett v. Insurance Co., 15 Abb. N. C. 239; Meyer v. Lathrop, 73 N. Y. 316; Smith v. Wetmore, 41 App. Div. 290–292, 52 N. Y. Supp. 402. Over 40 years having elapsed since the youngest of these devisees became of age, and no claim having been made by any of them, we deem it exceedingly improbable that defendants will ever be disturbed in their possession. If this were an action for specific performance of the contract, it may be that specific performance would not be decreed on the evidence presented, although specific performance of such contracts may be decreed where the title depends wholly on adverse possession, provided it is established to a moral certainty that the title is good and marketable. Simis v. McElroy, 160 N. Y. 156, 54 N. E. 674; Ottinger v. Strasburger, 33 Hun, 468, affirmed in 102 N. Y. 692; Baker v. Oakwood, 123 N. Y. 26, 25 N. E. 312, 10 L. R. A. 387; Hamershlag v. Duryea, 38 App. Div. 130, 56 N. Y. Supp. 615; Culver v. Rhodes, 87 N. Y. 348. In this case, however, the contract has been executed, the defendant is in possession, and the rule applicable to specific performance does not govern our determination of the case.

The agreement contained in the bond and mortgage is limited, in definite and specific terms, to the Linwood avenue frontage defect.

We cannot extend it by construction to include the rectangular strip defect, which was not known to or considered by the parties at the time. Courts cannot make contracts. How can we say what agreement the parties would have made with reference to this defect, which is insignificant compared with the frontage defect, to which alone their agreement relates? Would they have regarded it of sufficient importance to justify withholding any of the purchase price? If so, how much? These are questions which it is not the function of a court to answer. The case, therefore, must be decided the same as if such agreement had not been made. The question then resolves itself into this: Is it a defense to the foreclosure of a purchase-money mortgage that the mortgagor, in executing it, relied on a search, furnished in good faith by the mortgagee, which purported to show good title, when in fact there was a partial defect of record title? A long line of well-considered decisions enables us to readily answer the question in the negative. The mortgagor having suffered no damages, and being in undisturbed possession, there has not been a breach of the covenant of warranty by eviction or otherwise, and no defense to the foreclosure of the mortgage is established. Wiltsie, Mortg. Forec. §§ 431–437; 2 Jones, Mortg. §§ 1500–1507; Edwards v. Bodine, 26 Wend. 109; Parkinson v. Sherman, 74 N. Y. 93; Seidman v. Geib (Com. Pl.) 11 N. Y. Supp. 705; McConihe v. Fales, 107 N. Y. 408–412, 14 N. E. 285; Kirtz v. Peck, 113 N. Y. 222–231, 21 N. E. 130; Ryerson v. Willis, 81 N. Y. 280, 281; Farnham v. Hotchkiss, 2 Abb. Dec. 94–99; Banks v. Walker, 2 Sandf. Ch. 344; Platt v. Gilchrist, 3 Sandf. 118–125; Miller v. Avery, 2 Barb. Ch. 583–595. If there had been a covenant of seisin, the breach of such covenant might have been properly pleaded as a counterclaim, and the validity of the title would then have been directly in issue; for the covenant of seisin is broken at once, if the title be defective. Wiltsie, Mortg. Forec. §§ 435, 436; Merritt v. Gouley, 58 Hun, 372, 12 N. Y. Supp. 132; Edwards v. Bodine, 26 Wend. 109; Bingham v. Weiderwax, 1 N. Y. 509; York v. Allen, 30 N. Y. 104; Kent v. Welch, 7 Johns. 258; Blydenburgh v. Cotheal, 1 Duer, 176; 8 Am. & Eng. Enc. Law, 186, 187; Rawle, Cov. (5th Ed.) § 176; Mead v. Stackpole, 40 Hun, 473. If these devisees have any interest at all, they claim by title paramount to the mortgage, and could not be brought into this suit to litigate their rights. Cromwell v. MacLean, 123 N. Y. 474, 25 N. E. 932; Helck v. Reinheimer, 105 N. Y. 470, 12 N. E. 37; Jacobie v. Mickle, 144 N. Y. 237, 39 N. E. 66.

Plaintiff could not bring an action against Kaene's daughters to determine a claim to this property, even if they made a claim; for he is not in possession, and his assignor has not been in possession for upwards of eight years. Plaintiff being the assignee of the mortgage, and having neither title nor possession, it is difficult to perceive what form of action he could bring to have it determined that adverse possession has run against the interests of the devisees. If he is deprived of the right to enforce the mortgage until he perfects record title as to this defect, he will be placed at the mercy of said devisees, who, while not asserting any claim, may de-

cline, as they apparently have declined, to execute deeds without being compensated liberally. The court cannot upon principle decline to grant a foreclosure of this mortgage, nor would such course be warranted by precedents. It would have been more in accordance with the justice of the case to have withheld the award of costs, but we would scarcely be justified in modifying the judgment in that regard.

The judgment appealed from should be affirmed, but without costs. All concur, except SPRING and WILLIAMS, JJ., who dissent.